IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

EDDIE A. POINDEXTER                                                                                    PLAINTIFF
ADC #121353

V.                          Case No. 4:23-CV-01136-BRW-BBM

MAPLE ADKINS, Lieutenant,
Tucker Unit, ADC                                                                                        DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Wilson may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I.      INTRODUCTION**

On November 28, 2023, Plaintiff Eddie A. Poindexter ("Poindexter"), a prisoner currently incarcerated in the Tucker Unit of the Arkansas Division of Correction ("ADC"), filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983, alleging that Defendant Lieutenant Maple Adkins ("Adkins") violated his constitutional rights. (Doc. 1). The Court conducted an initial screening of the Complaint, as required by the Prison Litigation Reform Act

("PLRA"), and noted several deficiencies.[1] (Doc. 5). Poindexter was given leave to file an amended complaint to address those deficiencies and placed on notice that an amended pleading would supersede his previous Complaint. *Id.* at 7–8 (citing *In re Atlas Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000)).

On October 3, 2024, Poindexter filed an Amended Complaint, (Doc. 9), and, on October 9, 2024, he filed a Supplement to the Amended Complaint, (Doc. 10). Accordingly, the Court will proceed with screening. The Court will read the Amended Complaint and Supplement together in conducting its screening. *Kiir v. N. Dakota Pub. Health*, 651 F. App'x 567, 568 (8th Cir. 2016) (unpublished) (citations omitted).

## II.    ALLEGATIONS

In his Amended Complaint and Supplement, Poindexter lists numerous constitutional rights that he alleges were violated by Adkins. (Doc. 9-1; Doc. 10). More specifically, Poindexter broadly claims that Adkins intentionally: (1) discriminated against him; (2) violated his equal protection rights; (3) violated his Eighth Amendment right to be free from cruel and unusual punishment; (4) was grossly negligent; (5) subjected him to degrading and abusive neglect and grossly negligent bias; and (6) acted with deliberate indifference. (Doc. 9-1 at 4, 7–12, 14; Doc. 10 at 1–3).

---

[1] The PLRA requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or a portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). When making this determination, the Court must accept the truth of the factual allegations contained in the complaint, and it may consider the documents attached to the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

Although Poindexter attributes a variety of allegations to Adkins, he fails to provide more than conclusory assertions. For example, he claims that Adkins has "shake[n] down" and taken "shoes or unnecessary items" from him. (Doc. 9-1 at 14). He alleges that Adkins has caused other inmates at Tucker Unit to threaten "or cause gross conditions" for Poindexter. *Id*. He claims that Adkins has "placed up multiple fights against providing [Poindexter] with better in person requested rehabilitations programs," and he has been verbally harassed for following through with amended complaints. (Doc. 9-1 at 15, 21).

Poindexter also alleges that Adkins has been verbally abusive to him by using racial epithets and subjecting him to other racial abuse. (Doc. 9-1 at 7, 14, 17–18; Doc. 10 at 3). He provides no elaboration about the "other racial abuse." (Doc. 10 at 3). He also asserts that Adkins has caused him to suffer violations of his human rights and that she has "highly personal [v]endettas against Plaintiff" due to past grievances that Poindexter has filed against Adkins and her family member. (Doc. 9-1 at 4, 7, 19; Doc. 10 at 2–3). Poindexter asserts that, on June 15, 2021, Adkins called him to the security office because of past grievances that he had written about Adkins and her family member, C. Penister, at Tucker Max Security Unit. (Doc. 9-1 at 20). He claims that Adkins became very upset and started cursing and readdressing countless legal complaints that Poindexter had submitted about Adkins and C. Penister. *Id*.

Poindexter claims that Adkins is the supervisor for the sanitation workers at Tucker Unit. (Doc. 9-1 at 18). Poindexter alleges that Adkins told him she does not want him working on the sanitation crew due to past grievances that he "wrote on her or her family

3

members at Tucker Maximum Security Unit and here at Tucker Unit."[2] (Doc. 10 at 1–2). He further claims that Adkins continues to bring up past incidents from 2012 and 2013, and, at one point, told Poindexter "that she still remembers when [Poindexter] wrote her up and other Tucker Max Security Unit Prison Officials." *Id*. Poindexter asserts that Adkins "has caused other Tucker Unit Prison Security Guards or Administrative Officials too carry out or Maintained Inequality against [Plaintiff]." *Id*. (errors in original). He claims that Adkins has put him in imminent danger because she "has encouraged or enticed other inmates to stir up violent altercations or to put [Poindexter] out of certain cell [barracks] here at Tucker Unit[.]" (Doc. 9-1 at 10). He does not elaborate on any of these claims.

Poindexter asserts that Adkins violated his First Amendment right to be free from retaliation in September 2023 when she signed two major disciplinary reports against him that were written by Sergeants Quayle and McMillion. (Doc. 9-1 at 8, 10, 13, 15–16, 19–20). He alleges that, when Adkins advised Poindexter that she was serving the reports for Sergeants Quayle and McMillion, she began to verbally insult him about past grievances and legal mail that he wrote about Adkins and her family members. *Id*. at 8–9. He claims that he spent three weeks in restrictive housing for the two major disciplinary reports that were written by other officers but signed by Adkins. *Id*.

---

[2] Poindexter alleges that, on September 4, 2024, he requested assistance from Adkins because she is now Poindexter's job supervisor. (Doc. 9-1 at 11). He states that Adkins is the lieutenant over sanitation porters and barracks porters at Tucker Unit. (Doc. 9-1 at 11).

4

Poindexter sues Adkins in her individual capacity only. (Doc. 9-1 at 2). He fails to indicate his requested relief.[3] *Id*. at 5.

## III. DISCUSSION

To survive § 1915A screening, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* FED. R. CIV. P. 8(d) (holding allegations must be "simple, concise, and direct"). "[L]abels and conclusions," a "formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are insufficient to plead a plausible claim. *Iqbal*, 556 U.S. at 678.

A prisoner's § 1983 complaint must allege facts sufficient to show how each defendant was personally involved in the alleged constitutional wrongdoing. *Id.* at 676. Moreover, a prisoner cannot bring claims on behalf of other prisoners and must allege facts showing how he was personally injured by the alleged constitutional violation. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). Liberally construing the allegations in Poindexter's Amended Complaint and Supplement, the only facts that he provides appear to be related to claims of verbal harassment and retaliation. While he asserts that Adkins has violated a broad array of his constitutional rights, as well as his human rights, he has not provided any facts related to any of the other stated violations. Altogether, as presented, Poindexter has failed to state a plausible claim for relief related to verbal harassment or retaliation.

---

[3] In the "Relief" section of his Amended Complaint, Poindexter writes, "C. Penister (Sgt at Tucker Max See Unit in 2012–2015 The Plaintiff[.]" (errors in original). (Doc. 9-1 at 5).

### A. Verbal Harassment/Insults

Poindexter alleges that Adkins has been verbally abusive to him and has used racial epithets. (Doc. 9-1 at 7–9, 14, 17–18, 20; Doc. 10 at 3). Verbal threats and insults generally do not rise to the level of a constitutional violation. *See Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992) (finding officer's use of racial slur and threat to knock prisoner's teeth out was not actionable); *see also Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985) (holding allegation of racially offensive language directed at a prisoner does not, by itself, state a constitutional claim). The only exception to this rule is when a verbal threat rises to the level of a "wanton act of cruelty," such that the inmate is in fear of "instant and unexpected death at the whim of his allegedly bigoted custodians." *Burton v. Livingston*, 791 F.2d 97, 99–100 (8th Cir. 1986). While the claimed verbal abuse is unprofessional and disturbing, the alleged actions of Adkins in this case do not rise to the level of a constitutional violation.

### B. Retaliation

Poindexter also claims that Adkins took various retaliatory actions because he "wrote on her or her family members at Tucker Maximum Security Unit and here at Tucker Unit." (Doc. 10 at 2). To state a § 1983 retaliation claim, Poindexter must plead that: (1) he engaged in constitutionally protected activity; (2) Defendant took adverse actions against him that would chill a prisoner of ordinary firmness from engaging in that activity; and (3) his protected activities were the "but-for cause" of Defendant's adverse actions. *De Rossitte v. Correct Care Sols.*, LLC., 22 F. 4th 796, 804 (8th Cir. 2022); *Santiago v. Blair*, 707 F.3d 984, 992–93 (8th Cir. 2013); *Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019).

Poindexter alleges that he engaged in a constitutionally protected activity by filing a grievance or grievances against Adkins and her family. *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007); *Gonzalez v. Bendt*, 971 F.3d 742, 744–45 (8th Cir. 2020) (citations omitted). However, his vague allegations fail show that Adkins took adverse actions because of his constitutionally protected activity.

Poindexter first asserts that Adkins told him that she does "not want the Plaintiff working on sanitation work crew due too [sic] pass [sic] Unit Level Grievances that the Plaintiff wrote on her or her family members at Tucker Maximum Security Unit and here at Tucker Unit[.]" (Doc. 10 at 1–2); *see also* (Doc. 9-1 at 11, 18). However, he does not allege that Adkins was either directly or indirectly involved in withholding a sanitation job from him.

Next, Poindexter alleges that Adkins "has caused other Tucker Unit Prison Security Guards or Administrative Officials too carry out or Maintained Inequality against [him]." (Doc. 10 at 1–2) (errors in original). He also claims that Adkins continues to bring up past incidents from 2012 and 2013, and, at one point, told Poindexter "that she still remembers when [Plaintiff] wrote her up and other Tucker Max Security Unit Prison Officials." *Id*. Once again, Poindexter provides no elaboration on these allegations, such as what he wrote in his 2012 and 2013 grievances and what inequalities were maintained against him.

Poindexter further alleges that Adkins retaliated against him in September 2023 when she signed two major disciplinary reports that were written by Sergeants Quayle and McMillion. (Doc. 9-1 at 8, 10, 13, 15–16, 19–20). According to Poindexter, Adkins advised Poindexter that she was serving the reports *for* Sergeants Quayle and McMillion and began

7

to verbally insult him about past grievances and legal mail that he wrote about Adkins and her family members. *Id*. at 8–9. He claims that he spent three weeks in restrictive housing for the two major disciplinary reports that were signed by Adkins. *Id*. at 9. However, Poindexter admits that the disciplinaries were written by prison officials *other* than Adkins and alleges no retaliatory motive for those officials.

Poindexter's allegations regarding Adkins's verbal insults present a closer call yet still fail to state a plausible retaliation claim. In addition to the alleged insults when Adkins served the disciplinary reports in September 2023, Poindexter asserts that, on unspecified dates, she verbally harassed and insulted him for following through with amended complaints, and, on June 15, 2021, Adkins cursed at him for submitting "countless…legal complaints." (Doc. 9-1 at 9–10, 14–15, 20).

Despite being provided the opportunity to amend his complaint, Poindexter's allegations lack the "further factual enhancement" necessary to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Poindexter provides no details about what Adkins allegedly said to him, instead resting on vague allegations that she "verbally harassed," "insulted," and "cursed" him. (Doc. 9-1 at 11, 14–15, 19–20). He also provides *no* details about the grievances and lawsuits he allegedly filed against Adkins and her family member beyond the allegations that he has filed "countless" past complaints, and Adkins is allegedly upset about "pas[t] incidents from 2012 and 2013." (Doc. 9-1 at 20; Doc. 10 at 1–2). The details matter.

As previously noted, Poindexter must allege facts showing that Adkins took adverse actions that would chill *a prisoner of ordinary firmness* from continuing to exercise his

8

First Amendment rights *and* he must causally connect those adverse actions to his filing of previous grievances and lawsuit. Poindexter's vague allegations of cursing and verbal insults fall short of the kind of conduct that would dissuade a prisoner of ordinary firmness from filing grievances and lawsuits. *Cf. Santiago*, 707 F.3d at 992 (finding threats of death or serious harm to be sufficiently adverse actions to state an actionable retaliation claim); *Houston Comm. College System v. Wilson*, 595 U.S. 468, 477 (2002) ("[N]o one would think that a mere frown from a supervisor constitutes a sufficiently adverse action to give rise to an actionable First Amendment claim."). This is particularly bolstered by the fact that Poindexter, himself, continued to file grievances, lawsuits, and amended complaints. *See Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020) (holding that, although the ordinary firmness test is objective, courts may consider the plaintiff's actions in response to the alleged retaliation "as evidence of what a person of ordinary firmness would have done."). And, without further details regarding what grievances and lawsuits Poindexter allegedly filed against Adkins and her family, it is impossible to causally connect any particular First Amendment conduct with any alleged adverse action.

## IV. CONCLUSION

After careful consideration of Poindexter's Amended Complaint, (Doc. 9-1), and Supplement, (Doc. 1), the Court finds that Poindexter fails to state a claim upon which relief may be granted.

IT IS THEREFORE RECOMMENDED THAT:

1. Poindexter's Amended Complaint, (Doc. 9-1), and Supplement, (Doc. 10), be DISMISSED without prejudice for failure to state a claim upon which relief may be granted.

2. The Court RECOMMEND that the dismissal count as a "strike" for the purposes of the Prison Litigation Reform Act. 28 U.S.C. § 1915(g).

3. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

DATED this 5th day of November, 2024.

Benecia Moore
UNITED STATES MAGISTRATE JUDGE